UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| WANDA G. JACKSON | : | DOCKET NO. 06-0298 |
|---|---|---|
| VS. | : | JUDGE TRIMBLE |
| JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL<br>SECURITY | : | MAGISTRATE JUDGE WILSON |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. §405(g), the undersigned finds that the Commissioner's decision is not supported by substantial evidence. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

## BACKGROUND

Wanda G. Jackson filed the instant applications for Disability Insurance Benefits and Supplemental Security Income payments on November 4, 2002, and January 6, 2003, respectively. (Tr. 12, 66-69). She alleged an inability to work since October 3, 2000, due to high blood pressure, diabetes and kidney problems. (Tr. 66, 183). The claims were denied at the initial stage of the administrative process. (Tr. 31, 39-43). Thereafter, Jackson requested, and received a February 23, 2005, hearing before an ALJ. (Tr. 118-173). However, in a July 25, 2005, written decision, the ALJ determined that Jackson was not disabled under the Act, finding at Step Four of the sequential evaluation process that she retained the residual functional capacity to return to past relevant work as a kitchen helper. (Tr. 12-18). Jackson appealed the adverse

decision to the Appeals Council. Yet, on December 20, 2005, the Appeals Council denied Jackson's request for review, and thus the ALJ's decision became the final decision of the Commissioner. (Tr. 4-6).

On February 22, 2006, Jackson petitioned this court to review the denial of benefits. She alleges the following errors:

(1)   the ALJ erred in his Step Three analysis;

(2)   the ALJ failed to properly assess the claimant's residual functional capacity; and

(3)   the ALJ's hypothetical that he posited to the vocational expert was defective.

## STANDARD OF REVIEW

The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error. *Dellolio v. Heckler*, 705 F.2d 123 (5th Cir. 1993). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Brown*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401.

When appearing before the ALJ, the plaintiff had the burden of proof to establish a medically determinable physical or mental impairment that prevented her from engaging in any

substantial gainful activity for at least twelve consecutive months. 42 U.S.C. §§423(d)(1)(A) & 1381(a). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *Johnson v. Bowen,* 864 F.2d 340, 343-344 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## LAW AND ANALYSIS

The Commissioner evaluates disability claims under the Social Security Act through a five-step process: (1) Is the claimant currently working and engaged in substantial gainful activity? (2) Can the impairment or combination of impairments be classified as severe? (3) Does the impairment(s) meet or equal a listed impairment in Appendix 1 of the Commissioner's regulations? (If so, disability is automatic.) (4) Does the claimant's residual functional capacity permit her to perform past relevant work? and if not, (5) Can the claimant perform other work? 20 C.F.R. §§ 404.1520, 416.920. When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The first four steps place the burden upon the claimant. At the fifth step, the burden shifts to the Commissioner to establish that the claimant can perform other work. If the Commissioner meets this burden, then the claimant must then prove that she cannot in fact perform the work suggested. *See Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *Muse v. Sullivan*, 925 F.2d 785 (5th Cir. 1991).

**Issue 1:**

The ALJ found at Step Two of the sequential evaluation process that Jackson suffered from the following severe impairments: hypertension with coronary artery disease, cardiomegaly, and depression. (Tr. 14, 17). However, the ALJ concluded that the impairments

3

were not severe enough to meet or medically equal any one of the impairments listed in the Category of Impairments in Appendix 1 to Subpart P, Social Security Regulations No. 4. (Tr. 19, 26).

Plaintiff contends that her impairments meet § 12.05C of the Listings of Impairments. On February 17, 2005, Jackson was seen by Jerry L. Whiteman, Ph.D. for a psychological evaluation. (Tr. 106-108). Upon administration of the Wechsler Adult Intelligence Scale - III (WAIS-III), she obtained a Full Scale IQ of 70, a Verbal IQ of 76, and a Performance IQ of 69. *Id*. However, Whiteman did not diagnose Jackson as mentally retarded. Rather, he diagnosed borderline intelligence. (Tr. 106-108).[1] Accordingly, plaintiff's impairments do not meet §12.05C. *See, Domingue v. Barnhart*, 388 F.3d 462 (5th Cir. 9/23/2004)(despite IQ scores in the 60's, and with only a diagnosis of borderline intellectual functioning, the Fifth Circuit affirmed the Commissioner's finding that the claimant's impairments did not meet 20 C.F.R. § 404, Subpt. P., App. 1, § 12.05C).

**Issue 2:**

The ALJ next determined that Jackson retained the residual functional capacity for a full range of medium work from an exertional standpoint. (Tr. 17-18).[2] She is also able to

---

[1] This diagnosis accords with the *Diagnostic and Statistical Manual of Mental Disorders* (4th Ed. 1994)(DSM-IV), which recognizes a margin of error of up to 5 points when assessing IQ. DSM-IV at pgs. 39-40.

[2] Medium work is defined and explained by Social Security Ruling 83-10. It provides:
> [t]he regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary

understand, remember, and carry out simple tasks, but cannot work at a high pace. *Id*. She requires much routine, and needs convenient access to the bathroom. *Id*.

Although the ALJ's physical residual functional capacity assessment is arguably supported by substantial evidence,[3] the same cannot be said for his mental residual functional capacity determination. The only physician of record to assess plaintiff's mental health and to complete a Medical Source Statement of Ability to do Work-Related Activities (Mental) was Dr. Whiteman. (Tr. 106-110). In his statement, Dr. Whiteman indicated that Jackson's depression *et al*. caused her to suffer marked limitation in her ability to understand, remember, and carry out detailed instructions. (Tr. 109-110). Her ability to make judgments on simple work-related decisions was also markedly limited. *Id*. She further suffered marked limitations in her ability to

---

> work, which require precision use of the fingers as well as use of the hands and arms.
>
> The considerable lifting required for the full range of medium work usually requires frequent bending-stooping. (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist). Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward). However, there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck driver (semi-skilled jobs). In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

Social Security Ruling 83-10

[3] *See*, March 29, 2003, examination report wherein James Taylor, M.D. opined that Jackson's ability to sit, stand, walk, lift, hear, speak, and handle objects remained unimpaired. (Tr. 81-83).

5

respond appropriately to work pressures in a usual work setting and to respond appropriately to changes in a routine work setting. *Id.*[4]

Yet, the ALJ's decision does not address the limitations recognized by Dr. Whiteman in his medical source statement. Instead, the ALJ seems to have independently assessed Jackson's mental residual functional capacity. Even if the ALJ had endeavored to discount Dr. Whiteman's statement, the remaining record is devoid of any other assessments by qualified medical personnel (or other compelling record evidence) to support the ALJ's assessment. Accordingly, we necessarily find that the ALJ's residual functional capacity determination is not supported by substantial evidence. *See, Ripley v. Chater* 67 F.3d 552, 557-558 (5th Cir. 1995)(substantial evidence lacking where: no medical assessment of claimant's RFC, and claimant's testimony was inconsistent with ALJ's assessment); *Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004)(unpublished)(in the absence of medical opinion or evidence establishing that the claimant could perform the requisite exertional demands, the ALJ's determination is not supported by substantial evidence).[5] This error is material to the ALJ's ultimate disability determination.[6] Accordingly, the ALJ's conclusion that plaintiff is not disabled, is likewise not

---

[4] After the ALJ's decision, Jackson was again seen by Dr. Whiteman on August 12, 2005. (Tr. 113-117). Dr. Whiteman's latest findings were forwarded to the Appeals Council. (*See*, Tr. 7). We need not rely on this post-decision evidence to resolve the instant matter. The evidence may be more fully considered upon remand.

[5] Unpublished Fifth Circuit opinions issued on, or after January 1, 1996, are ordinarily not precedent. FRAP 47.5.4. However, they are persuasive. *Id.* Moreover, the fact that a case remains unpublished reflects the panel's belief that the decision simply reaffirmed a well-settled principle of law. *See*, FRAP 47.5.1.

[6] When making a finding that an applicant can return to her prior work at Step Four of the sequential evaluation process, the ALJ must directly compare the claimant's remaining functional capacities with the physical and mental demands of the claimant's previous work. *Latham v. Shalala*, 36 F.3d 482, 484 (5th Cir. 1994)(citations omitted). In fact here, when the vocational expert was confronted with a hypothetical that incorporated the limitations recognized by Dr. Whiteman, he opined that plaintiff could not perform any of her past relevant work. (Tr. 151-

supported by substantial evidence.[7]

For the foregoing reasons,

IT IS RECOMMENDED that this matter be REVERSED and REMANDED to the Commissioner for further proceedings consistent with this opinion.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, on December 11, 2006.

_____
ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE

---

152).

[7] We do not reach plaintiff's remaining assignment(s) of error. It (they) can be addressed upon remand.